■ In the Matter of ALDO GALLO, Respondent, v ROBERT D. LIMANDRI, as Commissioner of New York City Buildings, Appellant. [960 NYS2d 2]—

Order and judgment (one paper), Supreme Court, New York County (Geoffrey D. Wright, J.), entered April 28, 2011, which granted the petition to annul respondent's determination, dated October 14, 2010, revoking petitioner's hoist machine operator (HMO) license, and directed respondent to accept an Administrative Law Judge's (ALJ) recommendation that petitioner's license be suspended for one year, unanimously affirmed, without costs.

When the facts underlying petitioner's conviction of mail fraud are taken into account, there is virtually no justification for the claim that the conviction demonstrates poor moral character adversely reflecting on his fitness to hold an HMO license.

Petitioner's explanation of the circumstances leading up to his conviction are not meaningfully disputed. He testified that in 1999 he became a member of Local 14 of the International Union of Operating Engineers, whose members run construction machinery such as "cherry pickers" and "excavators." To obtain job assignments, members would sit in the union hall in Queens, where union delegates would select workers. Petitioner would sometimes sit for weeks without receiving a job assignment; when he was hired, his work involved operating small machinery on construction sites.

In 2002, petitioner applied for and received a Class C HMO license, making him eligible to operate cranes and derricks. Nevertheless, petitioner used the HMO license in only two of the 11 years he was a member of the local; more typically he received low paying jobs that did not require an HMO license, such as working on compressors, or fireproofing beams.

The facts underlying his conviction began in 2002, when a coworker informed petitioner that a new construction project, the New Town Project, was about to start in Queens. Petitioner went to the New Town site twice, once speaking with an owner, the second time introducing himself to a "master mac," a position like a foreman. Finding that he was still unable to secure a job at the New Town site, petitioner decided to call Carl Carrara, another "master mac," whom he knew from union events. Petitioner believed that Carrara was close with Steve Skinner, the union delegate. Petitioner asked Carrara to find out, through Skinner, who was getting jobs at New Town.

Carrara thereafter had a conversation with Skinner about petitioner, which conversation appears to have been recorded. As a result of the conversation, Skinner called petitioner and gave him a job operating a lull at the New Town site, at a rate of $40 or $41 per hour. Petitioner was qualified to operate a lull, and worked at the job for about 15 months. There is no evidence, or even any indication that petitioner made any threats or cash payments in order to get or keep the job, and he denied being aware of anyone else making any threats or payments to ensure that he kept the job.

In 2003, petitioner and 23 codefendants were charged with racketeering and related offenses, stemming from allegations that, between 1997 and 2003, they conspired to extort Locals 14 and 15 of the International Union of Operating Engineers to permit the defendants to assign preferential jobs to designees of the Genovese crime family. The charge against petitioner was mail fraud.

On October 6, 2004, petitioner pled guilty to mail fraud in violation of 18 USC §§ 1341 and 1346 (mail fraud) and 18 USC § 2 (aiding and abetting). During the allocution, the court informed petitioner that the count of the indictment to which he was pleading guilty charged him with "participating in a fraudulent scheme . . . whereby members of Local 14 . . . were deprived of the intangible right of honest services of their elected officials," at the "direction of members and associates of the Genovese Organized Crime Family" in connection with petitioner's "assignment . . . as an operating engineer at a construction site." Petitioner's admission consisted of the acknowledgement that between May and December 2002 he "was an operating engineer for Local 14 in New York City," and he "received a work assignment by making a request in Manhattan of people other than the Local 14 delegate to whom the request should have been made." Petitioner further admitted that he "received quarterly statements from Local 14 by mail,"

which admission was deemed to satisfy the mailing elements of the crime of mail fraud. He was sentenced to a term of two years of probation, of which the first six months was to include home confinement, and a fine of $2,000.

Effective July 1, 2008, applicants for renewals of HMO licenses were required to disclose prior criminal convictions (*see* Administrative Code of City of NY §§ 28-401.12, 28-401.19). On March 2, 2009, petitioner submitted his renewal application for his HMO license in which he disclosed that, on February 10, 2005, he had been convicted of "mail fraud," and sentenced two years of probation, with six months of home detention.

The Department of Buildings thereafter commenced proceedings to revoke petitioner's HMO license, alleging that, by virtue of his conviction of mail fraud, petitioner had exhibited poor moral character adversely reflecting on his fitness to hold an HMO license, in violation of Administrative Code § 28-401.19 (13).

At the hearing, petitioner asserted that he pleaded guilty because he was in the middle of separating from his wife and had financial problems. Petitioner added that he did not want to risk going to jail, because that would result in his wife, who was abusive and alcoholic, having full custody of his daughter. Petitioner denied knowing that he was breaking the law, and denied knowing that Carrara was a member of organized crime. After the hearing, the ALJ recommended that petitioner's license be suspended for 12 months. While he found that principles of collateral estoppel required finding that petitioner's guilty plea to mail fraud established the underlying elements of the criminal charge and therefore established that he violated the good moral character requirement of Administrative Code § 28-401.6, the ALJ noted that the Administrative Code contemplates the exercise of discretion, by providing for a range of penalties from suspension to revocation.

The ALJ distinguished petitioner's case from three other 2010 DOB proceedings—*Kilcullen, Persico,* and *Inglese*—where HMO licenses were revoked on account of racketeering convictions relating to organized crime. The ALJ noted that petitioner's sentence of two years' probation, with six months of home confinement, was more lenient than the other cases, which entailed sentences of five years of probation in *Kilcullen* to a year and a day (*Inglese*) and three years of prison (*Persico*). The ALJ also noted that petitioner's conviction arose from his receiving a job to operate a lull, a machine for which no license was required and which he was qualified to operate. The ALJ expressly credited petitioner's testimony that he "accepted the

guilty plea because he was a single parent who wanted to avoid a jail sentence." Finally, the ALJ observed that a recent U.S. Supreme Court decision, *Skilling v United States* (561 US —, 130 S Ct 2896 [2010]), construed the mail fraud statute, 18 USC § 1346, as "encompass[ing] fraudulently depriving another of one's honest services through bribes or kick backs only," and that in the present case, there was "no proof that [petitioner] accepted or paid a bribe," making it "questionable whether [petitioner] was convicted under a valid legal theory."

However, respondent Commissioner revoked petitioner's license rather than suspending it as recommended by the ALJ. The Commissioner emphasized that the mail fraud conviction, and the fact that petitioner was given a construction job at the direction of associates of the Genovese crime family, established poor moral character adversely reflecting on his fitness to hold a licensed position in the construction industry. He added that notwithstanding *Skilling*, petitioner's conviction was not overturned and was therefore valid.

In our view, the facts show only that petitioner went outside of the proper channels to secure a job on a construction site. They do not reflect substantial culpability, or the type of poor moral character adversely reflecting on his fitness to hold a licensed position in the construction industry.

We reject the suggestion that we are precluded from diverging from this Court's decisions in *Matter of Duffy v LiMandri* (93 AD3d 411 [1st Dept 2012]) and *Matter of Inglese v LiMandri* (89 AD3d 604 [1st Dept 2011], *lv denied* 18 NY3d 807 [2012]). That cases arise out of the same federal prosecution does not mean each petitioner's culpability is the same as that of all the others. Indeed, in both *Duffy* and *Inglese* the petitioners pleaded guilty not merely to mail fraud but to conspiracy to commit extortion in violation of 18 USC §§ 1951 and 3147 (1). Moreover, the particular facts in each case, as reflected in court records and Supreme Court decisions, were more blameworthy than merely "receiv[ing] a work assignment by making a request . . . of people other than the Local 14 delegate to whom the request should have been made." In *Matter of Inglese*, the petitioner admitted at his plea allocution that he was accorded preferential treatment in securing work as an operating engineer to run material waste at Rockefeller University knowing that someone else was being economically harmed as a result (*see* 29 Misc 3d 1234[A], 2010 NY Slip Op 52136[U] [Sup Ct, NY County 2010]); in *Matter of Duffy*, the petitioner specifically admitted, during the plea allocution, "assigning preferential and/or no-show union jobs to individuals selected by or associ-

ated with the Genovese organized crime family." Moreover, in neither case did those petitioners testify to extenuating, mitigating circumstances behind the plea. Indeed, in neither case was the petitioner's factual admission at his plea allocution limited to having made a request for a work assignment to a person other than the Local 14 delegate to whom the request should have been made, and only petitioner asserted that he did not know that the person to whom he made the request was an associate of an organized crime family.

While the Commissioner certainly has discretion to reject an ALJ's recommendation, we find that the penalty imposed was excessive in light of all the circumstances, in that it lacked any justification under the facts and circumstances underlying petitioner's mail fraud conviction (see Matter of Principe v New York City Dept. of Educ., 20 NY3d 963 [2012]). Accordingly, we affirm Supreme Court's order annulling respondent's revocation of petitioner's HMO license and directing the imposition of a one-year suspension. Concur—Friedman, J.P., Acosta, Saxe, Renwick and Freedman, JJ.